Ms. Stetson is here for the appellants, and Mr. Shirker for the appellees, and Mr. Stetson, you may begin when you're ready. Good morning, Your Honors. Karen Stetson on behalf of the appellants, William Roberts, Andrew Haar, and Jermaine Jackson. This is a music copyright infringement case and presents two issues on appeal. One is the construction of a statute that Section 411B of the Copyright Act, and the second issue has to do with the plaintiff's ownership and standing case. As to the registrations, our position on that, Your Honor, is that St. Luke's is controlling and dispositive. St. Luke's was decided after Section 411B was enacted. Does St. Luke's add an element to the statute that the statute doesn't have? No, I don't believe so, because I believe that the statute is a codification of existing law and original appellation. When I look at that statute, I don't see any language in that statute that adds to the or anything of that nature, and that's what our opinion could be construed to say in St. Luke, but point me to the language in the statute. I'm not entirely certain of the question. The statute uses the word knowledge, and I believe that the definition of that, the construction of that is based on existing law for the fraud on the court doctrine. So if you have an invalid copyright, and you know it's invalid, you can still bring an infringement action, as long as you didn't intend to engage in a fraud? Well, that's a little circular in my view, because you don't have an invalid registration unless you allege and unless the defendant, as a defense, alleges and proves that there has been an intentional concealment or intentional fraud, and it's material. So that's what makes it, it's not invalid until those requirements are met. And let me just say, as far as the registration, because it is, you know, use the word invalid, a registration complies with the statutory formalities. It is sufficient for purposes of bringing an infringement action, as long as it has been submitted to the Copyright Office with the fee that is supposed to accompany it and the deposit copy. And at that point, and the copyrightability of the work that passes, you know, by the So once that happens, you have a, quote, valid copyright registration for purposes of getting into court. That's your ticket into court. Now, once you're in court, the defendant has the right, if they want to, to challenge any of the facts that are stated therein. So the registration is not invalid, because it contains errors. And that's what, specifically, the codification of the existing law, this statute says. It says very clearly that you can go to court, regardless of errors in your registration, so long as the requirements there are, you know, not met. And they have to be challenged by the defendant. So it's incumbent upon the defendant to challenge the accuracy of the statements. And the reason- The statute says, unless you know, unless the registration is with knowledge that it is inaccurate, right? That it was submitted with knowledge of the inaccuracy. And I don't see any additional language that says, plus, there has to be intentional concealment or fraud. I don't see any language like that in the statute. That the language that you're relying upon, that in St. Luke's, I don't see that language in the statute. Okay. Well, original appellation, you know, prior to the enactment of this statute, original appellation set forth what you need to invalidate a registration. And it very clearly required intentional concealment or misrepresentation. St. Luke's reaffirmed that. In St. Luke's it said, you know, original appellation, the statute, you know, and I believe that that's an affirmation or an affirmance that nothing changed with regard to the standard of the level of knowledge. The statute does say the word knowledge, but it doesn't say the level of knowledge. And I believe that the language of the statute was taken basically from the myriad of cases that existed regarding this defense, fraud on the copyright office. That's what the defense is called. And it is a defense that the defendant has to raise and prove. Even the copyright office says that this statute is intended to be a codification of existing law for fraud on the copyright office. The law in this circuit and virtually every other circuit, it's not anything unique to this circuit. The law in this and every other circuit has been that in order to invalidate a copyright registration, you have to have some kind of intentional conduct or misconduct, if you will. Not simply somebody out in the world knew, you know, in the words of the X-Files, you know, the truth is out there. It's not that somebody knows the truth. The issue is that you're trying to defraud the copyright office. You're intending to mislead them. You know that what you're submitting isn't true. You're trying to get away with something. You know, those were the facts specifically in original Appalachian where the author failed to list a co-author on the application form. And there was no doubt that he knew of the existence of his co-author. But he believed he did not have to put him down on the application because it was a former employee who had, you know, sort of disavowed, you know, didn't want to have anything to do with the company anymore. And this court held in that circumstance that it was obvious that even though he intentionally and with complete knowledge of the existence of the co-author failed to put that down on the application, that there was no intent to deceive the copyright office because he readily admitted the existence of the co-author. And we've cited case after case, Your Honor, both before the statute was enacted and subsequent to the statute being enacted, including the recent supplemental authority, where it's very obvious that you look at the subjective good faith or subjective bad faith, if you will, of the filer or the applicant. Which registration gave rise to a valid copyright? There are three, right? Which is the one that... Your Honor, it really depends on what you mean by valid copyright because they all evidence a valid copyright. There's no issue with regard to the validity of the copyright itself. So we're talking about a registration... You can't have three separate copyrights for the same work. We don't have three separate copyrights. We have one copyright. That copyright is the legal protection of the work itself. That's the copyright. And you know, the defendants have never challenged the validity of the copyright, nor have they ever challenged the validity of the registration. So the registration is not what confers your copyrights. The registration is your ticket into court and to get your presumption of validity as to the accuracy of the facts stated therein. It gives you certain procedural advantages. It gives you certain remedies. But it doesn't grant you the copyright. And frankly, I think that that was a little bit of what caused the problem here was that the judge was of the view in some way that the registrations confer the copyright, but they do not. The copyright is created at the time of creation. The registration is a wholly separate issue than the validity of the copyright. There's the validity of the registration. There's the validity of the copyright. The validity of the registration, as I indicated, is paying the money, having the copyright ability of the work passed on, and then you get a presumption as to the correctness of the facts stated there. That's what you get for your registration. That was one of the incentives Congress provided so that people would register their work, so that they wouldn't have to prove up everything that's in their registration. There's many instances where there are multiple registrations, as in this case, especially where there's multiple authors. You have three registrations here. They were filed by all different filers. It was not multiple filing by the same person or entity or company.  The whole purpose of the statute, Judge, is to make it difficult, not easy, to make it difficult to invalidate registrations. That was the purpose of enacting the statute to begin with. The Copyright Office says it's a codification of the fraud on the Copyright Office defense, and numerous courts have said the same thing. I think we have your argument, and you've reserved some time for rebuttal. Thank you. Thank you. Mr. Shurker? May it please the Court, Elliot Shurker on behalf of the Applebee's. Judge Wilson, to go directly to your last series of questions, 37 CFR 202.3B11, which is cited in our brief, states one registration per work. As a general rule, only one copyright registration can be made for the same version of a particular work. The work, not the authors, not the claimants, one work. There are four exceptions, none of which apply here, none of which have been invoked by the plaintiffs. So we have an unprecedented, and I think I can say that fairly, case of three separate registrations, all of which are inconsistent with each other on dates of creation, dates of publication, whether the work had been previously registered, and we have the opinion of the register that none, repeat, none of these registrations would have been granted had the truth been told. There's no valid registration. Well, Mr. Shurker, it's not a question of the applicants not being the creators of the work. It's technical errors in terms of date of creation and so forth that would not necessarily defeat a registration if the process of the copyright office was followed of telling them we have a problem and then coming back and correcting it, right? Yes sir and no sir. These are essential to a valid registration, and I think my opponent was a little bit loose on the difference between a valid copyright and a valid registration. The courts do not have the authority to invalidate the copyright. She is correct when she says it's their ticket, quote unquote, into federal court, but every A dotted and every T crossed is essential for the copyright office to have a valid copyright, and that's the whole purpose, of course, of Section 411B. To describe it as revolutionary is not hard because as the court sees from the various district court cases we've cited, a lot of district courts have had a hard time figuring out where Section 411B fits within the old common law, but the decision was made by the Congress to leave it not to judges to guess what the register would do, but to have the We have that decision here as to whether these copyrights would have issued. They would not. Well, invalid registration was not raised by you as an affirmative defense, was it? It's not an affirmative defense, your honor. It was pleaded in our answer that there were three registrations. We were the ones who told the court that there were three registrations. There was not a single registration attached to any iteration of the plaintiff's complaint, and it wasn't until Roberts filed his response to interrogatories that he claimed two of the registrations. As the registrations on which they were relying, they abandoned the first one somewhere along the way. There is no authority to go into court with three separate, unconnected registrations for the same work, and that's what the Copyright Office rules say. Now, as to what 411B means, turning to the question of what 411B means, it's important at the outset, as we point out in our brief at some length, that St. Luke's has absolutely nothing to do with what we're talking about this morning. St. Luke's was a pre-411B case. It was tried and decided before 411B went into effect. The court commented on the passage of the statute, and that appears at head notes nine and ten of the opinion, at page 1201. But this was an original Appalachian Artworks case. This was a pre-statutory case. Now, pre-statute, to say that the law was all over the map on what the standard was, is an understatement. There was no body of case law that was adopted in 411B. Some courts said fraud. Some courts distinguished between inadvertent mistakes and other mistakes. But the bottom line is that pre-statute, judges were guessing. All right. Let me see if I understand this correctly now. This Prioritizing Resources and Organization for Intellectual Property Act was amended in 2008. Yes, sir. Adding this knowledge requirement. Yes, sir. St. Luke's came after that. It's a 2009 11th Circuit decision. Yes, sir. And so, we've got 11th Circuit precedent, and we're bound by the precedent, right? Judge, if I might, of course the court's bound by its precedent, but let me refer the court to page 22 of our brief, and footnote 13. The case was tried in the district court before the statute went into effect. And the statute cannot be applied retroactively. So I don't know how the parties briefed it in that case, and I don't know what the issue was, but there was no request, there could not have been a request, and there was no request to the register in that case. What a court is required to do now is whenever the accuracy, and Judge Titus, this goes back to your question, whenever the accuracy of a registration is raised in the district court, the court has a mandatory duty to refer it to the register. In the DeliverMed case, for example, from the 7th Circuit, the 7th Circuit did it. It had never been raised by anyone until the case was on appeal, and the 7th Circuit ordered the district court to refer it to the register. So if St. Luke's were a post-statute case, there would have had to have been a referral to the register. There wasn't, and there couldn't have been. The statute wasn't in effect at the time of trial. So in surveying the landscape of the law, Judge Hold commented on the statute, but the court will see no construction of the statute in that opinion. But the statute was in effect at the time that the 11th Circuit decided the appeal. Yes, sir. The statute was in effect, but it could not be applied retroactively. That's footnote, that's all the case law that is set forth in footnote 13 on page 22 of our brief, and we cite to Nimmer, in which it stated that, quote, general retroactivity standards apply to Section 411B. The statute applies to, quote, causes of action instituted following its enactment of October 13, 2008. The appeal in St. Luke's was pending before this court when the effective date came around. So I'm very comfortable saying St. Luke's didn't decide it. It couldn't have, it didn't, and the question before this court is what it always is. What do the words of the statute mean? And Judge Wilson, it's absolutely correct to say the word fraudulently does not appear in the statute. Now, Congress knows how to do this because they did it in the Lanham Act, which requires an element of fraud. So Congress knows how to use fraud when Congress chooses to use fraud. There's no- And if I go, if I go back to a basic tort law book about what is fraud, when I look at the elements, I don't see the word fraud. What I see is a representation with knowledge of its falsity. Isn't that fraud? With intent to deceive. What with intentions that they register, grant my application? With intent to deceive, Your Honor. There does not have to be an intent to deceive. It's merely knowing that it's inaccurate. There's no requirement any longer, except in the rare instance, and the case law isn't clear on this yet, but it appears to be the developing case law that if there is an inadvertent mistake. Now, how this could happen, I'm not entirely sure, but this is what Nimmer suggests. If there is an inadvertent mistake with an intent to deceive, that would be the old-fashioned fraud on the Copyright Office. But there is no longer an affirmative defense of fraud on the Copyright Office. It is the mandatory duty when the issue is raised, and it surely was in each one of our answers. It was raised early on before the magistrate judge. It was raised early on before the district judge, who said, I have three registrations here. What am I to do with them? And the argument was made, as you hear it made today, with absolutely no authority whatsoever, that it's not uncommon to have multiple registrations. And ultimately, the plaintiffs decided on the February 2007 registration. Now, even if they can do that, the February 2007 registration, the register determined would not have been granted because of the inaccurate representations on date of creation and date of publication. Those dates are important. They're not fripperies. Dates of creation and dates of publication are important for giving constructive notice to the world, which is what registration is. There's no investigation by the register when applications are filed. They're filed, they're looked at, and then they're filed away. It is a register. But it is notice, it is constructive notice to the world of when this music was created. And that's obviously going to be important because with constructive notice to the world, if someone else proports to create the same song a year later, you have your registration that it was created as of this date. And if that registration is a lie, then the rest of the world doesn't know what it can do with a certain piece of art or a certain piece of music. So these are the critical elements of a registration of a work of art. And if they're wrong, they're going to affect people's rights all the way down the road. And they were wrong in each one of these applications. They were wrong in each one of these applications. And there's no basis. The real goal of copyright registration and the statute is to prevent, you know, situations where there's been a mistake of some sort on a registration application or inadvertent error or something of that nature, which could take place if the date is wrong. Yes, sir. And it's critical. If you register the song as having been created in 2005, and then you go to sue someone who created an allegedly infringing song in 2006, but you created it after they did, and the date is wrong as it is here. It's protected if there are errors, if the errors are inadvertent or there are mistakes on the application. I mean, that's part of what the statute provides, isn't it? The statute uses the word knowingly. And what the court said, the district court said, and there's no basis for challenging this anywhere in the record, on each one of the registrations, the same individuals are listed as creators. Their wholly owned corporations are listed as claimants. And to say that when they made their deal with Sony, for example, which is the February 2007 registration, that Sony didn't need to know the date of the creation, that Sony didn't need to know the date of the publication. There was already a record out, for heaven's sake, at that point of the song. To say that anybody did this without knowing it was wrong, the district court said, requires a leap of faith that the court was not prepared to make. And there's no basis in the record for this court to make that kind of leap that the plaintiff want the court to make. So if we have a knowing misrepresentation, the statute kicks in, the court has a mandatory duty to refer it to the register, and the register made the determinations that the register did that these were not valid registrations. Without a valid registration, to quote the plaintiff's own words, they don't have a ticket into the courthouse to bring an action for infringement. My opponent didn't argue the ownership issue. I'll be happy to answer the court's questions on it. Thank you. Thank you, counsel. We'll hear again from Ms. Stetson. We believe that if the standard is lowered from an intentional act to mere knowledge by whom, I'm not even sure what it is that my opponent is proposing, who the knowledge would have to be of, the filer or anybody that happens to be named as a claimant or an author, I'm not exactly sure what the standard is. But if it were lowered from an intentional act to mere knowledge, then I think that would have been a dramatic change in the law. And the courts would not still be citing pre-411B cases for intentional fraud, including all the courts in this circuit that are still citing original appellation as good law. The same thing is happening in the Second Circuit. They're still relying on ECCE. Same thing in the Ninth Circuit. We've cited numerous circuit courts. I did want to address the waiver argument briefly because it is just not the case that there was any issue raised as to the validity of a registration or as to anybody's knowledge. If you look at the pleadings, the motions for summary judgment, the pretrial stipulation, there's no reference to 411B anywhere. There's no words, invalidity of registration anywhere. There's not the word knowledge of any kind in any of those pleadings. All that is indicated is that there are discrepancies in the three registrations, which is not enough to trigger this defense or put us on notice that we have to come forward with evidence of the knowledge. And that was another point that I wanted to make, that regardless of what level of knowledge we're talking about here, there never was a record developed of anybody's knowledge. However you want to define knowledge, because it was brought up sui sponte by the court at the pretrial conference. The other thing is that my opponent has said that we've never shown any, given any support for the proposition that there can be three or more registrations for the same work. The Copyright Office's response to the questions posed in this case indicate right off the bat that you can have a registration initially when the work is unpublished and another one when it's published. They also list a number of other exceptions. We cited the case of Hogarth in the Second Circuit where there were many registrations for the Tarzan books. It was the same work. There were multiple registrations filed by all kinds of parties. And the Second Circuit actually asked the Copyright Office, what do we do in this circumstance in terms of the presumption of correctness that you get with a certificate when there's multiple registrations? The Copyright Office said in that instance, and this is the same procedure that many other courts have followed and that we've cited, you have to look at the underlying evidence. Basically, the registrations lose their presumption and the playing field is level, if you will. They sort of cancel each other out and you've got to prove up the facts with underlying evidence. The one area that was challenged by the defendants here was the ownership issue, which we did fully brief and which we did submit evidence of obtaining the title, et cetera. We knew we were going to have to do that because they did challenge that. But it is incumbent on the defendant to actually challenge the facts stated in the registration as long as the registration meets the statutory formalities, which I've already said, and is filed within five years of the date of publication. As far as the developing case law, and I really would have to disagree with that. I see almost unanimity among the courts all across the country on this issue. That you do still have to have some kind of intentional conduct, even if they might state it slightly differently. The use of the word knowledge in that statute, the application itself has a caveat that says that if you make any knowingly false statements, I think it's a misdemeanor. There's something on the application itself. I think that may be the genesis of the use of that word in the statute. It's possible because that is on the application itself. That obviously would require intent as a criminal standard. And also the Copyright Office is known quite often to look to the Second Circuit for law and the existing case law in the Second Circuit. The main case on fraud of the Copyright Office was Eckes. And Eckes uses the word knowing. They use the word knowing and then they cite to a case of their own that specifies fraud. So I think that might be another reason why they use the word knowing as opposed to elaborating. They anticipated that the same standard, I believe, and a lot of other courts believe, would apply post-statute as had been applied for many, many years on this fraud on the court defense, which is a defense. Thank you. Thank you, counsel. And court will be in recess until 9 o'clock.